**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
**Maura D. Corrigan**

Justices
**Michael F. Cavanagh**
**Elizabeth A. Weaver**
**Marilyn Kelly**
**Clifford W. Taylor**
**Robert P. Young, Jr.**
**Stephen J. Markman**

**FILED JULY 20, 2004**

THE PEOPLE OF THE STATE OF
MICHIGAN

    Plaintiff -Appellant,

v                                 No. 123537

RODNEY WILLIAMS,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

We granted leave to appeal to determine whether the trial court's denial of defendant's request to read his preliminary examination transcript during a waiver-of-counsel proceeding violated the requirements of *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D).[1] The Court of Appeals held that the trial court's waiver proceeding did not comply with the requirements of

---

[1] 468 Mich 945 (2003).

*Anderson* and reversed defendant's conviction on that basis.[2] We hold that the trial court did not abuse its discretion in denying defendant's request and that defendant's waiver of counsel was unequivocal, knowing, and voluntary. Accordingly, we reverse the Court of Appeals decision and remand for consideration of defendant's remaining claims.

## I. FACTS AND PROCEEDINGS

Defendant was charged with first-degree felony murder,[3] possession of a firearm during the commission of a felony (felony firearm),[4] and armed robbery.[5] The trial court appointed counsel for defendant, but following defendant's preliminary examination, counsel withdrew because of a breakdown in the attorney-client relationship. The trial court provided defendant with a replacement court-appointed attorney.

During the prosecutor's case-in-chief, defendant became unhappy with his attorney's cross-examination of two prosecution witnesses. Defendant informed the court that he wished to represent himself:

---

[2] Unpublished opinion per curiam, issued February 28, 2003 (Docket No. 232827).

[3] MCL 750.316(1)(b).

[4] MCL 750.227b.

[5] MCL 750.529.

2

I do not wish to adjourn the proceeding, because I know this has been going on all along. But I would like to represent myself, in proper person. . . .

* * *

[O]nly if this Court would agree orally, and a written consent, please, that [two prosecution witnesses] may be brought back to court, and allow me to recross-examine [them].

The trial court explained to defendant the risks he faced in defending himself, including defendant's lack of familiarity with the Michigan rules of criminal procedure. Defendant answered that he understood the risks involved. He stated that he wished to "confront [his accusers] and question them" as was his "right by the United States Constitution."

The trial court again asked defendant whether he wished to represent himself; again, defendant answered, "Yes, ma'am." The trial court advised defendant that he would not later be permitted to appeal a conviction on the basis of his own ineffective assistance of counsel. Defendant answered, "Yes I read that."

The trial court then asked defendant, "Are you making this request knowingly, intelligently, and voluntarily?" Defendant answered, "Yes, ma'am." The trial court informed defendant that he would not be permitted to disrupt the courtroom, and that if he did, his attorney would be brought back to represent defendant. Defendant answered,

"Yes ma'am.  I would not disrespect this Court, or do anything that's unconduct of a gentleman [sic]."

The trial court then advised defendant of the sentence he would face if convicted.  Defendant said that he understood.  Defendant again stated that he wished to reexamine two excused prosecution witnesses:

> *The Defendant*:  Ma'am, is it also on the record, and it will probably be written down, that I will have an opportunity to recross-examine  the prosecution's first two witnesses . . . .

> *The Court*:  No, we're not bringing in those other witnesses, we're continuing with the trial. It's the Court's opinion that you had proper representation. . . . You can still have [your court-appointed attorney] if you want, or you can continue and represent yourself, but you are taking serious risks. . . . Do you understand that?

Defendant insisted that at his preliminary examination one of the prosecution's witnesses had testified that he was "only fifty percent sure" that defendant was the perpetrator.  Defendant was dissatisfied with his attorney because he did not cross-examine the witness on this alleged testimony. The prosecutor objected to defendant's characterization of the witness's testimony:

> And there is nothing in that exam transcript [preliminary examination] that indicates that [the witness is] only fifty percent sure.  What [defendant]'s saying he's taking out of context. And if [defendant] reads the whole thing, I think he'll understand why [defendant's attorney]

4

didn't elaborate with further questioning of the witness.

Defendant requested time to read the written preliminary examination testimony. The trial court denied defendant's request:

> No. I'm going to ask you one more time. Do you want to represent yourself? Because we're bringing in the jury.
>
> *The Defendant*: Your Honor, with all due respect. . . .
>
> *The Court*: I asked you one question.
>
> * * *
>
> *The Court*: Answer my question.
>
> *The Defendant*: Yes, ma'am.
>
> *The Court*: All right. Let's bring in the jury.

The trial court once again informed defendant that if he disrupted the proceedings, his court-appointed attorney would be brought back to represent him. Defendant stated that he understood.

Defendant's court-appointed attorney remained as standby counsel. He advised defendant throughout the trial, took part in sidebar discussions, helped defendant prepare his closing argument, and argued to the court regarding jury instructions and the form of the verdict.

Defendant was ultimately convicted[6] and appealed by right. In a split decision, the Court of Appeals reversed defendant's conviction and remanded for a new trial. The majority held that defendant's waiver of counsel was not unequivocal because defendant might not have elected self-representation had the trial court allowed him to read the preliminary examination transcript. The majority opined:

> [The trial court's] cursory handling of defendant's request violated defendant's right to have the proceeding conducted so as to ensure "that he knows what he is doing and his choice is made with eyes open." [Slip op at 1 (citations omitted).]

The Court of Appeals dissent would have held that the trial court's denial of defendant's request to read the preliminary examination transcript occurred after the court had already concluded the waiver of counsel procedure, and related solely to how the trial would proceed from that point forward.

## II. STANDARD OF REVIEW

The inquiry regarding waivers of Sixth Amendment rights mirrors the inquiry of whether a defendant has validly waived his Fifth Amendment rights: In each instance, the question is whether the defendant gave a

---

[6]The trial court vacated defendant's conviction for armed robbery on a double jeopardy ground.

knowing, intelligent, and voluntary waiver. See *Patterson v Illinois*, 487 US 285, 297-298; 108 S Ct 2389; 101 L Ed 2d 261 (1988) (waiver of Sixth Amendment rights is not more difficult to effectuate than waiver of Fifth Amendment rights).

Accordingly, we adopt the standard of review that has been used for trial court decisions regarding waivers of Fifth Amendment rights, finding it equally applicable to decisions regarding waivers of Sixth Amendment rights:

> "Although engaging in a de novo review of the entire record . . ., this Court does not disturb a trial court's factual findings regarding a knowing and intelligent waiver of [Sixth Amendment] rights "unless that ruling is found to be clearly erroneous." [*People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983).] Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment."

> Although we review for clear error the trial court's factual findings regarding a defendant's knowing and intelligent waiver of [Sixth Amendment] rights, . . . the meaning of "knowing and intelligent" is a question of law. We review questions of law de novo. [*People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000), quoting *People v Cheatham*, 453 Mich 1, 30; 551 NW2d 335 (1996).]

Thus, the reviewing court is not free to simply substitute its view for that of the trial court, but must be careful

7

to respect the trial court's role in determining factual issues and issues of credibility.[7]

### III.  DISCUSSION AND ANALYSIS

#### A.  THE SIXTH AMENDMENT AND THE RIGHT TO SELF-REPRESENTATION

The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration. *Maine v Moulton*, 474 US 159, 170; 106 S Ct 477 ; 88 L Ed 2d 481 (1985).  The Sixth Amendment right to counsel is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963). The United States Supreme Court has stated that courts should "'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938), quoting *Aetna Ins Co v Kennedy,* 301 US 389, 393; 57 S Ct 809; 81 L Ed 1177 (1937).

The United States Constitution does not, however, force a lawyer upon a defendant; a criminal defendant may

---

[7] To clarify, to the extent that *People v Adkins (After Remand),* 452 Mich 702, 721 n 16; 551 NW2d 108 (1996), can be read to say that trial court decisions regarding Sixth Amendment waivers are only reviewed for abuse of discretion, it is erroneous.  We believe the correct standard is that set forth above.

8

choose to waive representation and represent himself. *Iowa v Tovar*, 541 US ___; 124 S Ct 1379, 1387; 158 L Ed 2d 209 (2004). "Waiver of the right to counsel . . . must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" *Id.* at 1383, quoting *Brady v United States*, 397 US 742, 748, 90 S Ct 1463; 25 L Ed 2d 747 (1970). A waiver is sufficient if the defendant "knows what he is doing and his choice is made with eyes open." *Adams v United States ex rel McCann*, 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 (1942); *Godinez v Moran*, 509 US 389, 401 n 12; 113 S Ct 2680; 125 L Ed 2d 321 (1993).

B. THE RIGHT TO COUNSEL UNDER MICHIGAN LAW

The right of self-representation under Michigan law is secured by Const 1963, art 1, § 13[8] and by statute, MCL 763.1.[9] In *Anderson, supra* at 367-368, this Court held that a trial court must make three findings before granting a defendant's waiver request. First, the waiver request must

_____

[8] "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."

[9] "On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face."

9

be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business.

Consistent with *Anderson*, MCR 6.005(D)(1) governs procedures concerning a defendant's waiver of the right to an attorney. It prohibits a court from granting a defendant's waiver request without first

> advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation . . . . [MCR 6.005(D)(1).]

## C. APPLICATION

### 1. DEFENDANT'S WAIVER WAS UNEQUIVOCAL

Initially, defendant conditioned his waiver of the right to counsel on the trial court's granting of his request to recall for cross-examination two excused witnesses. A defendant who elects to proceed in propria persona after proceedings are underway, however, is not entitled to retry the case. The decision whether to recall a witness is left to the sound discretion of the trial court. MRE 611(a); *People v Fedderson,* 327 Mich 213, 220;

10

41 NW2d 527 (1950); *Potts v Shepard Maine Constr Co*, 151 Mich App 19, 26; 391 NW2d 357 (1986).

In this case, during the waiver of counsel proceeding, the trial court explicitly informed defendant that he would not be permitted to recall any excused witnesses. The court told him, "No, we're not bringing in those other witnesses, we're continuing with the trial." The court had previously and repeatedly asked defendant if he still wished to represent himself given this ruling. Defendant unequivocally answered, "Yes, ma'am."

We believe the record reflects that the trial court exercised admirable patience in dealing with a defendant who wished to represent himself according to his own rules. The court advised defendant very clearly that he would not be permitted to recall the excused witnesses, regardless of what they had said during their preliminary examination testimony.

The dissent may well be correct that defendant was "listening" without "hearing" what the court was saying. *Post* at 14. Defendant's subjective understanding, however, can only be gleaned by reference to what he said on the record. The record shows that after the court ruled that his insistence on being allowed to recall excused witnesses would not be indulged, defendant answered affirmatively

11

that he, nevertheless, wished to invoke his right of self-representation. Defendant's unrealistic "hopes of introducing evidence" in contravention of the court's explicit ruling do not render invalid defendant's unequivocal invocation of his right to self-representation. *Post* at 15.

The Court of Appeals misread the colloquy between the trial court and defendant. The record reveals that defendant was dissatisfied with the trial court's ruling that he could not recall an excused witness. Defendant argued with that ruling by claiming his attorney did not adequately cross-examine the excused witness on the basis of the witness's preliminary examination testimony. Whatever was contained in the preliminary examination transcript, however, was irrelevant at that point because the trial court had already ruled that the witnesses could not be recalled by defendant. The trial court was not required to permit defendant to read transcript testimony when the content was immaterial and the jury was assembled and waiting. Therefore, the Court of Appeals incorrectly held that the trial court erred in refusing to honor defendant's request to read the preliminary examination transcript. The requirement under *Anderson* that a

defendant unequivocally assert his right to waive counsel was therefore satisfied in this case.

### 2. DEFENDANT'S WAIVER WAS KNOWING, INTELLIGENT, AND VOLUNTARY

As indicated from the portions of the record quoted above, the trial court methodically complied with the remainder of the requirements of *Anderson*. Defendant was fully apprised of the risks he faced by choosing to represent himself and he knowingly and voluntarily chose to accept them. He may not now be heard to complain about his choice. In *Adkins, supra* at 725, we quoted with approval language ultimately from *People v Morton*, 175 Mich App 1, 8-9; 437 NW2d 284 (1989), that applies equally here:

> "'To permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected.'"

The trial court determined on the record that defendant's motion to proceed in propria persona was made knowingly, intelligently, and voluntarily. The trial court complied with the *Anderson* requirements.

### 3. MCR 6.005 REQUIREMENTS WERE SATISFIED

Contrary to the dissent, we believe the trial court followed the letter, and not just the spirit, of MCR

13

6.005(D).  The trial court advised defendant of "the charge, the maximum possible prison sentence for the offense, [and] any mandatory minimum sentence required by law":

> *The Court*:  And let me first inform you, then, and I have to do this on the record, what the max—the minimum and maximum sentences are, so that if you are found guilty, you know what's ahead of you.  For the homicide felony murder, the maximum is life.  For the armed robbery, the sentence is life or any term of years, unless aggravated assault or serious injury is involved, and then it's not less than two years.  And for the felony firearm, that's two years, which would be. . . in addition to, and preceding, before, any term of imprisonment imposed for the felony or attempted felony conviction. Do you understand all that?

> *The Defendant*:  Yes, ma'am.

> * * *

> *The Court*:  Mr. Williams, I want you to fully understand that if you are found guilty of homicide felony murder which alleges that you did, while in the perpetration attempted perpetration of a robbery, murder one Jerry Jones, that is a mandatory life sentence.  Life is the minimum and life is the maximum.  Do you understand that?

> *The Defendant*:  Yes, ma'am.

The court further explicitly complied with MCR 6.005(D)(1) by advising defendant of "the risk involved in self-representation:"

> *The Court*:  Now, sir, as I mentioned before, there are great risks that you are taking on in representing yourself.  Do you understand that?

14

> *The Defendant*: Well, your Honor. I know ya' all could possibly get me another attorney, but it would be another court-appointed attorney.
>
> *The Court*: No, that's not an option. We're in the middle of trial.
>
> *The Defendant*: Well, good.

The trial court complied with the requirement of MCR 6.005(D)(2) by providing defendant his court-appointed attorney as an advisor:

> *The Court*: He's going to be here during the trial so that you can ask him any questions and he can give you any counsel that you might need.
>
> *The Defendant*: Thank you, your Honor.

The record reflects that the trial court conscientiously complied with *every* requirement of MCR 6.005(D), exceeding the "substantial compliance" required under *Adkins, supra* at 706. We do not agree with the dissent that 6.005(D) requires that a court "indicate whether it believe[s] defendant's request [is] contingent on other factors." *Post* at 13. The trial court satisfied all of the waiver-of-counsel procedure required under MCR 6.005(D) and did not err in granting defendant's request to waive counsel and allowing defendant to proceed in propria persona.

15

## III. CONCLUSION

Although defendant appeared to condition his initial waiver of counsel on the trial court's agreement to allow him to recall and cross-examine two excused witnesses, he subsequently made an intelligent, knowing, and voluntary waiver of his right to counsel after the trial court rejected defendant's request to recall and cross-examine the witnesses.  Defendant is not entitled to a new trial.  We reverse the Court of Appeals decision and remand to the Court of Appeals to consider defendant's remaining claims.

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

16

# STATE OF MICHIGAN

## SUPREME COURT

THE PEOPLE OF THE STATE OF
MICHIGAN,

    Plaintiff-Appellant,

v                                      No. 123537

RODNEY WILLIAMS,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

In *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), this Court held that basic requirements must be satisfied before a defendant's request to waive counsel and proceed in propria persona may be granted. Michigan law additionally requires a trial court to follow the mandates of MCR 6.005(D) before granting such a request. Here, the Court of Appeals found that the trial court provided the disclosures required by MCR 6.005(D). However, the panel ultimately concluded that defendant's waiver of his right to counsel was not unequivocal, fully knowing, intelligent, and voluntary as required by *Anderson*. Because I agree with the Court of Appeals assessment of the proceedings, I must respectfully dissent from today's decision.

## I. Discussion

The Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees that "a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v California*, 422 US 806, 807; 95 S Ct 2525; 45 L Ed 2d 562 (1975); *Gideon v Wainwright*, 372 US 335, 340-344; 83 S Ct 792; 9 L Ed 2d 799 (1963). Concomitantly, the Sixth Amendment right to counsel also implies a "correlative right to dispense with a lawyer's help." *Adams v United States*, 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 (1942). Under Michigan law, the right to self-representation is expressly protected by Const 1963, art 1, § 13 and by statute, MCL 763.1. At times, however, the right to counsel and the right to self-representation may appear to be at odds.[1]

---

[1] "There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Faretta, supra* at 832. "This Court, however, has found that a defendant has either a right to counsel or a right to proceed in propria persona, but not both. . . . Consequently, there is unavoidable tension created between two constitutional rights when a
(continued…)

2

In order to preserve the delicate balance between these two rights, the United States Supreme Court has held that any waiver of the right to counsel must be knowing, intelligent, and voluntary. *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938). Moreover, the waiver must be made with "sufficient awareness of the relevant circumstances" and the defendant "must be warned specifically of the hazards ahead." *Iowa v Tovar*, 541 US __; 124 S Ct 1379; 158 L Ed 2d 209 (2004). Finally, a court must "indulge every reasonable presumption against waiver . . . ." *Johnson, supra* at 464.

This Court has likewise determined that specific requirements must be satisfied and express disclosures must be made before a trial court may grant a defendant's request to waive counsel. First, the defendant's request to waive the right to counsel must be unequivocal. *Anderson, supra* at 367. "Second, once the defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. . . . The trial court must make the *pro se* defendant aware of the

(…continued)
defendant chooses self-representation." *People v Adkins (After Remand)*, 452 Mich 702, 720; 551 NW2d 108 (1996).

3

dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 368. Third, the trial court must determine that the defendant will not disrupt or unduly inconvenience the proceedings. *Id.* Fourth, the trial court must give the necessary disclosures set forth under MCR 6.005(D).[2] *Adkins*, *supra* at 722-723.

Thus, in order to determine whether the instant defendant "kn[e]w what he [was] doing and his choice [was] made with eyes open," *Adams*, *supra* at 279, a thorough examination of the trial court proceedings is required. Indeed, the existence of a valid waiver "must depend in each case upon the particular facts and circumstances

---

[2] MCR 6.005(D) provides in pertinent part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

surrounding that case . . . ." *Anderson*, *supra* at 370; see also *People v McKinley*, 383 Mich 529, 536; 176 NW2d 406 (1970). Because the majority's recitation of the facts and proceedings omits large portions of the exchange between defendant and the trial court, I find it necessary to fill in the blanks left by the majority's opinion.

## II. Trial Court Proceedings

During its case-in-chief, the prosecution called Florian Mager as a witness. At the end of defense counsel's recross-examination, the following exchange took place:

> *Mr. Cook (defense counsel)*: I have no further questions of this witness.
>
> *The Court*: Thank you, sir. You can step down.
>
> *Mr. King (prosecutor)*: The People call as their next witness, your Honor, Tracey Jo Williams.
>
> *The Court*: All right. If there are any people in the . . .
>
> *Mr. Cook*: (Interposing) Your Honor, there is one more question that I would ask.
>
> *The Court*: All right. Sir, can you come back to the stand? . . . You're still under oath to tell the truth, sir.
>
> *The Deputy*: Mr. Williams? Mr. Williams?
>
> *Mr. Cook*: No, your Honor, no more questions.
>
> *The Court*: Thank you, sir. You can step down.
>
> (Witness excused)
>
> *Mr. King*: Once again, your Honor, the People call, as their next witness, Tracey Jo Williams.

Your Honor, may this witness be excused?  He is working at this time.

*The Court*:  Any objection?  Mr. Cook, any objection to . . .

*Mr. Cook*:  (Interposing) I'm sorry, your Honor?

*The Court*: Any objection to this witness being excused?

*Mr. Cook*: No, your Honor.

*The Defendant*: Yes.  Wait.

*The Court*: He's excused.  Mr. Williams.

*The Deputy*: Mr. Williams.  Mr. Williams.

*The Defendant*: Could we get a recess for five minutes, please, your Honor?

*The Deputy*:  No, you don't talk to your Honor, you talk to your attorney.

*Mr. Cook*: Your Honor, may I have just a few minutes with my client?

*The Court*:  All right.  We'll excuse the jury for a few minutes.

For nearly one half-hour, the trial court was in recess.  Once the parties reconvened, the following exchange ensued:

*The Court*: Are we ready to bring in the jury?

*Mr. King*: Yes, your Honor.

*Mr. Cook*: Yes, your Honor.

*The Court*: Back on the record on case number 4026—hold off—the People versus Rodney Williams, out of the presence of the jury.

Mr. Williams, I'm going to inform you, right now, that if you act up, again, you are going to be taken out of the courtroom.  And I didn't want to say that in front of the jury, but that's what's going to happen.

*The Defendant*: Yes, ma'am.

6

The prosecutor called the next witness, Tracey Jo Williams. After defense counsel's second recross-examination, the trial court instructed Ms. Williams to step down and the court broke for lunch. The parties reconvened after the break and the following occurred outside the presence of the jury:

> *Mr. Cook*: For the record, your Honor, my name is Donald Cook, appearing on behalf of Mr. Williams.
>
> Your Honor, I believe he wants to address the Court. And I think we probably need to get it out of the way before we have the jury here.
>
> *The Court*: All right. Out of the presence of the jury. What would you like to say, Mr. Williams?
>
> *The Defendant*: Good morning [sic], your Honor.
>
> Your Honor, due to circumstances, I would like to terminate my representation of my attorney, Mr. Donald A. Cook, due to the fact that Mr. Cook has failed to represent me, appropriately. He has allowed the prosecution witnesses to testify. And he has failed to ask them pertinent questions that's pertaining to my life. Also, he has allowed the first witness to be excused from this courtroom. And I am entitled, I hope, to a proper, fair representation, and also a fair trial.
>
> And, also, if the Court deems proper, with all honor and due respect, I would like to have— I do not wish to adjourn this proceeding, because I know this has been going on all along. But I would like to represent myself, in proper person. *And, also, <u>if</u> . . .*
>
> *The Deputy*: (Interposing) Quiet in the courtroom.
>
> *The Defendant*: (Continuing) -- *if, only if this Court would agree orally, and a written*

7

*consent, please, that Mr. Florian Mager be brought back to court, and allow me to recross-examine him, as well as Ms. Tracey Jo Williams. This is for my life. And I accept and I appreciate all that Mr. Donald Cook has done, but these records have facts here, statements that cannot be denied, reports from the Detroit police officers, a Mr. Jerry Jones, making statements, himself, and Mr. Florian Mager, that have not been brought out. And I can do that.* [Emphasis added.]

The trial court then gave defense counsel an opportunity to place comments on the record. Defense counsel indicated that he appropriately cross-examined the witnesses in question and that he believed those witnesses had been excused. The trial court then informed defendant that the court must abide by the rules of evidence and that certain things that defendant believed may be introduced may not actually be admissible. At this point, the trial court asked defendant if he realized the risk he was taking by representing himself. The prosecutor then weighed in, stating:

> *Mr. King*: I was just going to indicate, your Honor, that the People would strenuously object to this, especially in this stage of the proceedings. I agree with Mr. Cook that he's done all that he can do in this case. And you can only play with the hand that you're dealt. And Mr. Cook has represented Mr. Williams, I think, in the best possible light that someone can represent someone. He hasn't done anything—or left anything out, that I can see, at least at this point. . . .

8

The trial court attempted to further inform defendant of the great risks involved with self-representation. For example, the trial court noted that another attorney would not be appointed, defendant could not later claim he was ineffective as his own counsel, defendant had not attended law school, and defendant was not trained in the rules of evidence. Further, the trial court warned that if defendant disrupted the proceedings, Mr. Cook would take over defendant's representation. The trial court also posed the following question:

> *The Court*: Are you making this request knowinging [sic], intelligently, and voluntarily?
>
> *The Defendant*: Yes ma'am.

The trial court also informed defendant of the charges against him and the possible penalties he faced. Despite this exchange, the following colloquy then took place:

> *The Court*: . . . Do you understand all that?
>
> *The Defendant*: Yes, ma'am.
>
> *The Court*: Okay.
>
> *The Defendant*: Your Honor?
>
> *The Court*: Yes?
>
> *The Defendant*: Ma'am, is it also on the record, and it will probably [be] written down, that I will have an opportunity to recross-examine the prosecutor's first two witnesses, Florian Mager and --
>
> *The Court*: (Interposing) No, we're not bringing in those other witnesses, we're continuing with the trial. It's the Court's opinion that you had proper representation. Mr. Cook is an excellent attorney. And we are not

9

starting the trial over, we are continuing with the trial. You can still have Mr. Cook, if you want, or you can continue and represent yourself . . . .

Notwithstanding the trial court's best efforts, defendant continued to articulate his reasons for wanting to recall the first witness. Apparently, defendant remained under the impression that the first witness's preliminary examination testimony conflicted with his trial testimony.

> *The Defendant*: But the jury have heard Mr. Mager only state that at the lineup he was not sure. That's one not sure. And if, at the preliminary exam, if Mr. Mager is not sure, again, then this man has no—he's not sure if it was me, or not. . . .

The prosecutor then indicated that if defendant was permitted to look at the preliminary examination, his concerns would disappear. While the majority includes some portions of this exchange, I believe that the proceedings at this particular stage should be viewed in more detail.

> *Mr. King*: And I only stand, your Honor, not to entertain the defendant, but that is a gross misrepresentation of the preliminary examination transcript. . . . What he's saying he's taking out of context. And if he reads the whole thing, I think he'll understand why Mr. Cook didn't elaborate with further questioning of the witness.

> *The Court*: All right. I'm going to . . .

> *The Defendant*: (Interposing) May I read it?

> *The Court*: No. I'm going to ask you one more time. Do you want to represent yourself? Because we're bringing in the jury.

10

*The Defendant*: Your Honor, with all due respect . . .

*The Court*: (Interposing) I asked you one question.

*The Defendant*: Your Honor, this is my life.

*The Court*: Do you want to represent yourself?

*The Defendant*: Your Honor? Please. I'm pleadin' with you, your Honor.

*The Court*: Answer my question.

*The Defendant*: What's a little minute in my life? Please.

*The Court*: Answer my question.

*The Defendant*: Yes, ma'am.

*The Court*: All right. Let's bring in the jury.

After this colloquy, defendant nevertheless attempted to recall the second witness because he was under the impression that the witness had not been excused.

### III. Analysis

In *Adkins*, this Court concluded that proper compliance with waiver of counsel procedures requires that the trial court "engage, *on the record*, in a methodical assessment of the wisdom of self-representation by the defendant." *Adkins*, *supra* at 721 (emphasis added). Moreover, this Court abides by the general principle that a trial court "should indulge every reasonable presumption against waiver . . . ." *Id.*, quoting *Johnson*, *supra* at 464. "The right to counsel, as guarantor of a fair trial, is a fundamental right that should not be deemed waived unless the record

11

clearly and unequivocally evidences such waiver, a record that must be made by the trial judge's diligent inquiry into the relevant factors." *Adkins, supra* at 740-741 (CAVANAGH, J., concurring in part and dissenting in part). Because the record indicates that defendant did not unequivocally, knowingly, intelligently, and voluntarily waive his right to counsel, defendant's attempted waiver was invalid.

A. Defendant's Waiver Was Not Unequivocal

While the trial court followed the spirit of MCR 6.005(D) and asked defendant if his waiver was made "knowingly, intelligently, and voluntarily," the trial court did not make an express finding on the record that defendant unequivocally waived his constitutional right to counsel. In *Adkins*, this Court held that trial courts must substantially comply with the requirements of *Anderson* and MCR 6.005(D).[3] Thus, *Adkins* directs a trial court to indicate on the record whether the attempted waiver is

_____

[3] In *Adkins*, I agreed that "substantial compliance" with the requirements of *Anderson* and MCR 6.005(D) adequately protects a defendant's rights. *Adkins, supra* at 737-738 (CAVANAGH, J., concurring in part and dissenting in part). However, I remain committed to the view that strict compliance with these requirements better protects a defendant's rights, as well as ensures that an appellate parachute is not created. *People v Dennany*, 445 Mich 412, 456-458; 519 NW2d 128 (1994) (CAVANAGH, J., concurring in part and dissenting in part).

unequivocal. *Id*. at 721-722. Even under a substantial compliance analysis, however, the trial court in this case wholly failed to indicate whether it believed defendant's request was contingent on other factors—namely, recalling the prosecution's witnesses and examining the preliminary examination transcripts—or whether the request was unequivocal.

In any event, the record more than adequately demonstrates that defendant's choice was not unequivocal. The majority states that "[i]nitially, defendant conditioned his waiver of the right to counsel on the trial court's granting of his request to recross-examine two excused witnesses." *Ante* at 8. An evenhanded reading of the trial transcripts, however, reveals that despite the trial court's best efforts, defendant's waiver was conditional throughout the proceeding. The trial court informed defendant that he would not be able to recall the excused witnesses and then repeatedly asked defendant if he wished to represent himself. In spite of this line of questioning, defendant still expressed his desire to recall the witnesses and review the preliminary examination transcript. As such, a balanced evaluation of the record indicates that although defendant was listening to the

trial court, defendant was not hearing what the trial court had to say.

This Court has previously noted that "the effectiveness of an attempted waiver does not depend on what the court says, but rather, what the defendant understands." *Adkins*, *supra* at 723. Under the circumstances of this case, it is clear that defendant did not fully comprehend the trial court's warnings and defendant wavered in his request throughout the proceeding. When the record is objectively viewed, one is left with the distinct impression that defendant eventually surrendered to the trial court's questioning in the hopes of introducing evidence that he believed favorable to his case. Thus, defendant's attempted waiver was invalid.

Further, I am puzzled by the majority's conclusion that defendant's "unrealistic" hopes did not render defendant's attempted waiver invalid. *Ante* at 12. The majority acknowledges that defendant was not truly hearing what the trial court was saying. Further, the majority appropriately notes that defendant's understanding "can only be gleaned by reference to what he said on the record." *Ante* at 10. Upon its review of the record, the majority effortlessly concludes that defendant's hopes were "unrealistic." However, defendant nevertheless harbored

14

these hopes and the trial court should have similarly recognized that these "unrealistic" hopes were preventing defendant from hearing what the trial court was saying. *Adkins* could not be more clear that the effectiveness of the attempted waiver depends on what the defendant understands.

Finally, although the trial court may not have been under any obligation to permit defendant to view the transcripts or recall the witnesses, the trial court erred when it failed to recognize that defendant's attempted waiver was equivocal. The overarching rule of this Court's decision in *Adkins,* as well as the United States Supreme Court's decision in *Johnson*, is that if there is any doubt about the unequivocal nature of a defendant's attempted waiver of counsel, then the trial court should deny the defendant's request and defendant should proceed with counsel.[4]

---

[4] It has often been said that "[a]n indigent defendant, entitled to the appointment of a lawyer at public expense, is not entitled to choose his lawyer. He may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers." *People v Ginther*, 390 Mich 436, 441; 212 NW2d 922 (1973). Here, the trial court found that defense counsel provided proper representation. Moreover, defendant did not assert a breakdown in the attorney-client relationship. Under these particular circumstances, the trial court, and defendant

(continued…)

15

**B. Defendant's Waiver Was Not Knowing, Intelligent, and Voluntary**

For essentially the same reasons as detailed above, I cannot lightly assume defendant possessed the requisite state of mind under the facts of this case. Specifically, the record evidences that defendant's attempted waiver was not knowing, intelligent, and voluntary. Even though the trial court followed the spirit of *Anderson* and its progeny, the record indicates defendant was fixated on his ability to recall the excused witnesses and view the preliminary examination transcripts. As the hearing was drawing to a close and the trial court was understandably losing its patience, defendant kept pleading for his life. Nevertheless, the trial court continued its questioning and defendant eventually answered affirmatively to the question repeatedly posed. When the record is reviewed fairly, I believe it is apparent defendant's waiver was not knowing, intelligent, or voluntary.

---

(…continued)

for that matter, may have been better served by reliance on the general presumption against waiver. "Where a defendant, *for whatever reason*, has not unequivocally stated a desire for self-representation, the trial court should inform the defendant that present counsel will continue to represent him." *Adkins*, *supra* 722 n 18 (emphasis added).

16

IV. Conclusion

In sum, I agree with the Court of Appeals assessment of the proceedings. Defendant's attempted waiver was conditional throughout the proceedings. Further, despite the trial court's best efforts, it was evident that defendant did not fully understand the nature of the trial court's admonishments. Thus, defendant's attempted waiver was not unequivocal, knowing, intelligent, and voluntary. I would, therefore, affirm the decision of the Court of Appeals.

Michael F. Cavanagh
Marilyn Kelly